**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

K.P., AN INDIVIDUAL,

Plaintiff,

v.

RED ROOF INNS, INC.; RRF HOLDING COMPANY, LLC; RED ROOF FRANCHISING, LLC; RRI WEST MANAGEMENT, LLC; BW RRI I LLC d/b/a RED ROOF INN ROCKFORD,

Defendants.

CIVIL ACTION NO.: 2:26-cv-729

**COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff K.P. ("K.P."), by and through the undersigned counsel, files this Complaint against Red Roof Inns, Inc.; RRF Holding Company, LLC; Red Roof Franchising, LLC; RRI West Management, LLC; and BW RRI I LLC d/b/a Red Roof Inn Rockford as Defendants, and would respectfully show the Court as follows:

## SUMMARY

1. K.P. brings this civil action under 18 U.S.C. § 1595(a) as a victim of sex trafficking in violation of 18 U.S.C. § 1591, seeking compensation for the severe harm she suffered while she was trafficked at the Red Roof Inn Rockford hotel property located at 7434 E. State Street, Rockford, IL 61108, owned and/or operated by Defendant BW RRI I LLC d/b/a Red Roof Inn Rockford ("Franchisee Defendant") (the "Subject Red Roof Inn"). The Subject Red Roof Inn was branded, franchised and/or supported, and controlled through brand standards, policies, and systems established and/or administered by Defendants Red Roof Inns, Inc.; RRF Holding

Company, LLC; Red Roof Franchising, LLC; and RRI West Management, LLC (collectively, the "RRI Brand Defendants").

2. K.P. alleges that Defendants derived financial benefit from facilitating sex trafficking by providing a venue—and the cover of a legitimate business—where traffickers and sex buyers could exploit victims, including K.P. Sex trafficking ventures cannot operate without access to physical spaces; providing traffickers with a hotel room is providing them with an essential place of business. Defendants enabled traffickers despite obvious and apparent indicators of sex trafficking occurring at the hotel property.

3. Defendants had the knowledge and opportunity to prevent the severe and permanent harm K.P. experienced. Instead, Defendants continued to profit from and facilitate the trafficking venture by renting rooms and providing hotel services under circumstances in which they knew or should have known that sex trafficking was occurring at the property. Accordingly, K.P. brings this action for damages and attorneys' fees as authorized by federal law.

## PARTIES

4. K.P. is a resident of Illinois and was born in 1988. She may be contacted through her lead counsel, whose information is contained below.

5. K.P. is a victim of sex trafficking under 18 U.S.C. § 1591(a). K.P. was harbored, transported, or provided for the purpose of being caused, through force, fraud, or coercion, to commit a commercial sex act.

6. The trafficking of K.P. occurred in or affected interstate commerce.

7. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address are not contained in this Complaint to protect the safety, privacy, and

identity of this sex trafficking victim. Nationwide, similarly situated plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

8. Defendant Red Roof Inns, Inc. is a Delaware corporation with its principal place of business in Ohio. It can be served through its registered agent: Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, Ohio 43221.

9. Defendant RRF Holding Company, LLC is a Delaware limited liability company with its principal place of business in Ohio. It can be served through its registered agent: Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, Ohio 43221.

10. Defendant Red Roof Franchising, LLC is a Delaware limited liability company with its principal place of business in Ohio. It can be served through its registered agent: Corporation Service Company, 50 West Broad Street, Suite 1330, Columbus, Ohio 43215. Its corporate headquarters is located at 7185 Walton Pkwy, New Albany, Ohio 43054.

11. Defendant RRI West Management, LLC is a Delaware limited liability company with its principal place of business in Ohio. It can be served through its registered agent: Capitol Corporate Services, Inc., 4568 Mayfield Road, Suite 204, Cleveland, Ohio 44121.

12. Defendants Red Roof Inns, Inc., RRF Holding Company, LLC, Red Roof Franchising, LLC, and RRI West Management, LLC are referred to collectively as the “RRI Brand Defendants.” At all relevant times, the RRI Brand Defendants owned, controlled, franchised, branded, and/or managed the Red Roof Inn brand and franchise system and/or otherwise established and enforced brand standards, policies, training, and centralized systems applicable to Red Roof Inn-branded properties, including the Subject Red Roof Inn.

13. Defendant BW RRI I LLC d/b/a Red Roof Inn Rockford is a limited liability company registered to do business in Illinois, with its principal place of business at 7434 E. State Street,

Rockford, IL 61108. BW RRI I LLC acquired the Subject Red Roof Inn property in or about June 2015 and owned the property until it was conveyed to 2 Sunstar Rockford LLC by special warranty deed recorded on or about March 17, 2026. BW RRI I LLC thus owned the Subject Red Roof Inn property throughout substantially all of the period of K.P.'s trafficking. At all relevant times, Franchisee Defendant owned, operated, controlled, and managed the Subject Red Roof Inn and employed the staff at that hotel.

14. The RRI Brand Defendants and Franchisee Defendant will be referred to collectively as "Defendants."

**JURISDICTION AND VENUE**

15. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA. This Court has supplemental jurisdiction over Plaintiff's state-law negligence claim pursuant to 28 U.S.C. § 1367(a) because that claim is so related to Plaintiff's TVPRA claims that it forms part of the same case or controversy under Article III of the United States Constitution.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because, for venue purposes, each Defendant resides in this District, including because each Defendant is subject to this Court's personal jurisdiction with respect to this action. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and omissions giving rise to Plaintiff's claims—including Defendants' franchising, branding, policymaking, training, oversight, and revenue-related conduct connected to the Subject Red Roof Inn—occurred in this District.

17. Each of the RRI Brand Defendants participated in a joint venture operating the Subject Red Roof Inn from a central location at the RRI corporate offices in New Albany, Ohio, within this District. On information and belief:

a. The relationship between the RRI Brand Defendants was centered at the RRI corporate offices in the Southern District of Ohio;

b. The RRI Brand Defendants signed agreements with one another related to the Subject Red Roof Inn from RRI corporate offices in the Southern District of Ohio;

c. The RRI Brand Defendants exercised joint control over operations of the Subject Red Roof Inn from a central location at RRI corporate offices in the Southern District of Ohio;

d. The RRI Brand Defendants distributed revenue earned from the Subject Red Roof Inn among themselves from RRI corporate offices in the Southern District of Ohio;

e. The RRI Brand Defendants developed policies for the Subject Red Roof Inn from RRI corporate offices in the Southern District of Ohio; and

f. The RRI Brand Defendants communicated with one another regarding operation of the Subject Red Roof Inn from RRI corporate offices in the Southern District of Ohio.

18. Plaintiff's claims against the Franchisee Defendant arise out of its contacts with Ohio through its franchising and/or operational relationship with the RRI Brand Defendants, which have their principal place of business in the Southern District of Ohio. Upon information and belief:

a. The Franchisee Defendant actively sought out a franchising and/or operational relationship by contacting the RRI Brand Defendants in Ohio;

b. The Franchisee Defendant acknowledged that the execution and acceptance of the franchising and/or operating agreement occurred in the Southern District of Ohio;

c. The franchising and/or operating agreement had a choice of law provision selecting the law of Ohio as the governing law;

d. The franchising and/or operating agreement required the Franchisee Defendant to irrevocably submit to the jurisdiction of Ohio courts and waived all objections to personal jurisdiction and service of process;

e. The agreement required the Franchisee Defendant to report information to the RRI Brand Defendants in Ohio, including information about all incidents involving safety, security, public relations, or serious injury to persons or property, including those involving sex trafficking victims;

f. The Franchisee Defendant agreed to submit all notices required under the agreement to the RRI Brand Defendants in the Southern District of Ohio;

g. The Franchisee Defendant was required to attend training and meetings in Ohio;

h. The RRI Brand Defendants dictated policies related to safety, security, human trafficking, employee training and response from their principal place of business in the Southern District of Ohio;

i. Reservation information for rooms at the Subject Red Roof Inn passed through a system operated and managed by the RRI Brand Defendants from their principal place of business in Ohio;

j. Payment information for rooms at the Subject Red Roof Inn passed through a system operated and managed by the RRI Brand Defendants in Ohio;

k. The benefit that the Franchisee Defendant received from room rentals was governed by the Ohio franchising and/or operating agreement; and

l. The Franchisee Defendant agreed to make all payments due under the agreement at the RRI Brand Defendants' principal place of business in the Southern District of Ohio.

19. Upon information and belief, the Franchisee Defendant contractually consented to jurisdiction in the Southern District of Ohio.

## STATEMENT OF FACTS

### I. K.P. Was a Victim of Sex Trafficking at the Hotel Owned, Operated, Managed and Controlled by Defendants

20. From approximately March 2025 through April 2026—a period of approximately thirteen months—K.P. was sex trafficked at the Red Roof Inn Rockford located at 7434 E. State Street, Rockford, IL 61108 (the "Subject Red Roof Inn"). K.P. was trafficked at the Subject Red Roof Inn in repeated successive stays throughout this period.

21. K.P. was trafficked by a male trafficker known as "Mike Mike," who also used the name "Shawn" ("the Trafficker"). The Trafficker used force, fraud, and coercion to compel K.P. to engage in commercial sex acts with sex buyers at the Subject Red Roof Inn. The Trafficker repeatedly beat K.P., leaving visible bruising. The Trafficker also exploited and fostered K.P.'s addiction to crack cocaine, using her dependence on drugs that he supplied and controlled as a further instrument of coercion. The Trafficker subjected K.P. to frequent verbal abuse, threats, and physical altercations, many of which occurred within earshot of hotel staff.

22. The Trafficker procured rooms at the Subject Red Roof Inn in repeated successive stays over the trafficking period. To insulate himself, the Trafficker directed third parties—including his drug customers, among them a frequent renter known as "Tyler"—to rent rooms at the hotel for his use. At other times, rooms were booked in K.P.'s own name. The Trafficker advertised K.P. online for commercial sex acts to be performed at the property on the website SkipTheGames; the advertisements were posted by a female associate of the Trafficker known as "Michelle," using photographs of K.P. Over time, K.P. was caused to develop a regular clientele of sex buyers who repeatedly returned to the Subject Red Roof Inn.

23. The Trafficker simultaneously operated an open drug-dealing business out of the rooms at the Subject Red Roof Inn, selling crack cocaine to buyers who came to and from the property. Toward the end of the trafficking period, the Trafficker was also trafficking at least one other victim, a woman known as "Michelle," alongside K.P. K.P.'s trafficking ended in approximately April 2026, when the Trafficker turned his attention to a new victim and K.P. was able to escape.

24. There were obvious signs that K.P. was being trafficked at the Subject Red Roof Inn such that Defendants knew or, through the exercise of reasonable diligence, should have known that they were benefiting from and participating in a venture engaged in her sexual exploitation. Obvious indicators of K.P.'s trafficking at the Subject Red Roof Inn included:

a. K.P. was trafficked in rooms at the Subject Red Roof Inn procured by or at the direction of the Trafficker in repeated successive stays over the trafficking period, including rooms rented by third-party drug customers of the Trafficker (such as the frequent renter known as "Tyler") who did not themselves occupy the rooms, and rooms booked in K.P.'s own name;

b. There was steady foot traffic involving sex buyers, whom K.P. was made to meet at the rear entrances of the hotel and let in directly to the rooms so that the buyers would bypass the lobby and front desk;

c. K.P. openly solicited commercial sex around the hotel property, including in the exterior areas where guests and staff congregated to smoke;

d. K.P. had visible bruising across her body from the Trafficker's repeated beatings;

e. The Trafficker and K.P. engaged in frequent verbal and physical altercations within earshot of hotel staff;

f. Drugs and drug paraphernalia—including bongs and crack pipes—were present and visible in the rooms occupied by K.P. and the Trafficker, which were observed or should have been observed by housekeeping staff when the rooms were turned over between stays;

g. The Trafficker openly sold crack cocaine out of the rooms, generating a steady stream of drug-buyer traffic to and from the property;

h. K.P. was advertised online by her trafficker for commercial sex acts at the Subject Red Roof Inn using photographs posted on SkipTheGames and, upon information and belief, the hotel's free Wi-Fi; and

i. Other commonly known sex trafficking red flags which Defendants knew or should have known of had anti-trafficking measures been timely and properly implemented.

25. Defendants permitted the open and notorious trafficking of K.P. to continue without intervention, despite the obvious and apparent indicators described above.

26. Numerous employees at the Subject Red Roof Inn, including management-level employees, observed and/or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment.

27. Despite this knowledge, Defendants took no steps to report suspected trafficking, inquire about K.P.'s welfare, refuse to rent rooms to the Trafficker or those acting at his direction, or otherwise intervene. Defendants had the authority to deny accommodation to or eject any guest engaged in illegal activity or creating a danger to the health, safety, or welfare of others—yet they exercised none of these options. Defendants provided traffickers a venue, with the cover of a legitimate business, where they could conduct their trafficking activities without having to expend significant efforts to avoid detection or interference.

28. As a consequence of being sex trafficked at the Subject Red Roof Inn, K.P. suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, and psychological injuries, including significant levels of psychological trauma, depression, anxiety disorders, and PTSD, which affect daily functioning.

## II. Sex Trafficking Has Long Been Prevalent at RRI Branded Properties

29. Defendants' knowledge extends beyond general industry awareness. Use of RRI branded properties for sex trafficking is well known to the Defendants. RRI hotels are one of the five chains most frequently identified as a site of sex trafficking in federal criminal complaints. Several hundred traffickers involved with hundreds of victims have been prosecuted by state and federal law enforcement agencies for sex trafficking and forced prostitution out of RRI branded properties.

30. No later than 2013, the RRI Brand Defendants began carefully monitoring online reviews and other customer feedback for RRI branded properties. Leadership of the RRI Brand

Defendants was obsessed with customer feedback, including reviews that frequently described prostitution, pimps, drug activity, and trafficking at RRI properties nationwide. The RRI Brand Defendants received compiled reviews from Reputology, an online-review aggregator.

31. The publicly available information connecting RRI branded properties to prostitution and sex trafficking includes the following:

a. From 2009 to 2018, eleven survivors were sex trafficked at two Atlanta-area Red Roof Inn properties. Red Roof Inn settled the resulting lawsuit mid-trial in the Northern District of Georgia. During the trial, a former front desk worker testified that forty to fifty percent of one location's clientele consisted of sex traffickers and their victims. Red Roof Inn corporate employees admitted awareness of minor sex trafficking at the properties. An employee at one property stated that prostitution was so pervasive there was no need to report it to management because it was already known;

b. A published investigative analysis of online customer reviews found that hotel guests suspected or claimed to have witnessed prostitution at 177 Red Roof Inn locations nationwide, with numerous reviewers asserting that the activity was so blatant that hotel management must have been aware of it; and

c. Upon information and belief, online reviews and other publicly available information concerning the Subject Red Roof Inn in Rockford, Illinois described conditions consistent with the red flags of prostitution, drug activity, and other criminal activity occurring on the subject premises, which gave actual or constructive notice to Defendants.

32. Based, in part, on the foregoing, at the time K.P. was trafficked at the Subject Red Roof Inn, the RRI Brand Defendants knew or should have known, at least the following: that sex trafficking was endemic at their branded properties, including the Subject Red Roof Inn, and that their existing measures to detect and prevent trafficking were inadequate.

## **III. Franchisee Defendant Could Have Stopped K.P.'s Trafficking But Instead Facilitated It**

33. The Franchisee Defendant is responsible for the acts and omissions of all employees of the Subject Red Roof Inn because these acts and omissions were committed in the scope and course of employment and because the Franchisee Defendant failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the known risks of human trafficking at the Subject Red Roof Inn.

34. The Franchisee Defendant facilitated K.P.'s trafficking through numerous acts and omissions, including:

a. Renting rooms used for K.P.'s trafficking in repeated successive stays over the trafficking period—including rooms rented by the Trafficker's third-party drug customers who did not occupy them and rooms booked in K.P.'s own name—despite the observed signs of trafficking, including the obvious indicators that K.P. was being trafficked in those rooms and commercially sexually exploited;

b. Ignoring the open and obvious drug activity conducted from the rooms, including the drugs and drug paraphernalia (bongs and crack pipes) visible in the rooms at turnover between stays, without any welfare check, inquiry, or intervention;

c. Failing to monitor the rear entrances of the hotel through which a steady stream of sex buyers accessed the rooms while bypassing the lobby and front desk,

and the exterior areas of the property where K.P. openly solicited commercial sex; and

d. Ignoring the frequent verbal and physical altercations between the Trafficker and K.P. that occurred within earshot of staff, and K.P.'s visible injuries, without any welfare check, inquiry, report, or intervention.

35. An implicit understanding existed between K.P.'s trafficker and the Franchisee Defendant, evidenced by the fact that the Trafficker operated openly at the property over an approximately thirteen-month trafficking period, procured rooms through his drug customers and through K.P. herself in repeated successive stays, openly sold drugs from the rooms, and permitted K.P. to solicit commercial sex openly on and around the premises, all without question, interference, or concern for detection.

## IV. The RRI Brand Defendants Retained Control Over Relevant Aspects of Operations and Had Both the Opportunity and Duty to Prevent Sex Trafficking

36. The RRI Brand Defendants retained control over the details and methods of aspects of the operation of the Subject Red Roof Inn that are directly relevant to the proliferation of sex trafficking. As a result, the RRI Brand Defendants participated in a venture with sex traffickers and had both the opportunity and the duty to prevent K.P.'s trafficking.

37. Upon information and belief, the RRI Brand Defendants exercised systemic and pervasive control over the Franchisee Defendant's operation of the Subject Red Roof Inn, including the methods and details of work, through ways including:

a. Controlling and requiring use of a centralized reservation and marketing system;

b. Dictating policies regarding forms of payment and identification requirements;

c. Setting prices, imposing required discounts, setting wages, and dictating staffing levels;

d. Providing and mandating standardized training, including training on human trafficking;

e. Requiring collection of guest data through RRI Brand Defendants' systems and making that data available to the RRI Brand Defendants;

f. Monitoring and controlling online bookings, customer reviews, and response platforms;

g. Setting and enforcing brand standards, policies, and procedures, including those specifically related to human trafficking, cybersecurity, and guest safety;

h. Conducting regular inspections and audits; and

i. Requiring compliance with Wi-Fi qualifications, internet landing page policies, filtering, and cybersecurity thresholds.

38. The RRI Brand Defendants had the right to and actually did enforce their control through inspections, compliance monitoring, directing specific corrective steps, mandating training, and the right to terminate the franchise or operating agreement.

39. The RRI Brand Defendants are vicariously liable for the acts and omissions of the Franchisee Defendant. The RRI Brand Defendants and the Franchisee Defendant acted as joint employers because, at the Subject Red Roof Inn, there is a high degree of interrelation of operations and profit sharing.

## CAUSES OF ACTION

### Count I: Beneficiary Liability Under 18 U.S.C. § 1595(a) (All Defendants)

40. Plaintiff incorporates all previous allegations herein.

41. K.P. is an individual who is a victim of a violation of Chapter 77 of Title 18, including sex trafficking in violation of 18 U.S.C. § 1591, and is thus entitled to bring a civil action under 18 U.S.C. § 1595(a). K.P. was caused, through force, fraud, and coercion, to engage in commercial sex acts at the Subject Red Roof Inn for the financial benefit of her trafficker and Defendants.

42. **Knowing Benefit.** Defendants knowingly benefited, financially or by receiving anything of value, from participation in a venture they knew or should have known was engaged in a violation of the TVPRA. The rental of a room constitutes a financial benefit from a relationship with the Trafficker. Defendants also benefited from franchise fees, royalty fees, reservation fees, marketing fees, and other ancillary fees, as well as from acquiring valuable customer data through free Wi-Fi used by traffickers and buyers.

43. **Participation in a Venture.** Each Defendant participated in a venture with, among others, K.P.'s trafficker. Sex trafficking ventures cannot operate without access to physical spaces; providing traffickers with a hotel room is providing them with an essential place of business. That is participation. Participation in a venture does not require an "overt act" furthering the sex trafficking aspect of the venture. Each Defendant had an ongoing business relationship with K.P.'s trafficker, who was able to continue procuring rooms—through his drug customers, through K.P. herself, and otherwise at his direction—repeatedly and in successive stays throughout the trafficking period, despite Defendants' knowledge or constructive knowledge of the trafficking. The venturers shared a common purpose—the rental of hotel rooms and the making of profits. The repeated room rentals and renewals procured by and for K.P.'s trafficker were not standard arm's length transactions but constituted a continuous course of dealing that facilitated and sustained the sex trafficking venture.

44. **Knowledge.** Defendants knew or should have known that the venture in which they participated was engaged in acts in violation of the TVPRA. Under the negligence standard of § 1595(a), Plaintiff need not show actual knowledge or conspiracy. Evidence that Defendants were on notice about the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff, combined with evidence specific to K.P.'s own trafficking—including the numerous red flags that should have alerted staff to her situation—satisfies the constructive knowledge standard. Defendants cannot insulate themselves from statutory liability by consciously avoiding information that would otherwise constitute constructive knowledge.

45. The ventures in which each Defendant participated were a direct, producing, and proximate cause of the injuries and damages to K.P. Under the TVPRA, Defendants are jointly and severally liable for all damages a jury awards to K.P.

**Count II: RRI Brand Defendants' Vicarious Liability for Franchisee Defendant's Violations of the TVPRA (Actual Agency)**

46. Plaintiff incorporates all previous allegations herein.

47. The Franchisee Defendant acted as the actual agent of the RRI Brand Defendants with respect to operation of the Subject Red Roof Inn because, at all relevant times, the RRI Brand Defendants exercised systemic control over the Franchisee Defendant's day-to-day operations, including the means and methods of operation.

48. Under the TVPRA and federal common law, a principal is vicariously liable for the violations of its actual agent. In addition to their own direct liability under Count I, the RRI Brand Defendants are also vicariously liable to K.P. for the TVPRA violations of the Franchisee Defendant, which is the RRI Brand Defendants' actual agent.

**Count III: Negligence (All Defendants)**

49. Plaintiff incorporates all previous allegations herein.

50. In addition to, and in the alternative to, her claims under the TVPRA, K.P. asserts a claim of common-law negligence against all Defendants.

51. At all relevant times, K.P. was a guest, business invitee, and/or other person lawfully present at the Subject Red Roof Inn, including during stays in rooms booked in her own name. By virtue of the special relationship between an innkeeper and its guests and invitees, Defendants owed K.P. an affirmative duty to exercise reasonable care for her safety and to take reasonable measures to protect her against foreseeable criminal acts of third parties on the premises, including sex trafficking, sexual exploitation, and physical abuse.

52. The criminal conduct perpetrated against K.P. at the Subject Red Roof Inn was foreseeable to Defendants. Foreseeability is established by, among other things: (a) the obvious and apparent indicators of K.P.'s own trafficking described above, which occurred openly and repeatedly on the premises over an approximately thirteen-month period; (b) the open drug-dealing operation conducted from the rooms used for K.P.'s trafficking; (c) the well-documented prevalence of prostitution and sex trafficking at RRI branded properties nationwide, of which the RRI Brand Defendants had actual or constructive knowledge through litigation, law enforcement activity, online customer reviews, and review-monitoring services; and (d) upon information and belief, online reviews and other publicly available information specific to the Subject Red Roof Inn describing prostitution, drug activity, and other criminal activity on the premises.

53. In light of that foreseeable risk, Defendants, by and through their agents, servants, and employees, owed K.P. duties that included: providing reasonable and adequate security and monitoring of the premises; adopting, implementing, and enforcing policies, protocols, and training reasonably designed to detect, prevent, and respond to sex trafficking and related criminal

activity; adequately hiring, training, and supervising hotel staff, including front desk, housekeeping, and management personnel; controlling access to the premises; and operating the Subject Red Roof Inn in a manner that did not endanger persons lawfully on the premises, including K.P.

54. Defendants breached the foregoing duties and were negligent and careless, individually and by and through their agents, servants, and employees, in ways including but not limited to the following:

a. Failing to adopt, establish, implement, and/or enforce anti-trafficking policies, protocols, and training at the Subject Red Roof Inn, including policies and protocols consistent with recognized industry anti-trafficking standards;

b. Failing to properly and adequately hire, train, supervise, and retain employees, including front desk, housekeeping, and management personnel, in recognizing, preventing, and responding to prostitution and sex trafficking;

c. Continuing to rent rooms used for K.P.'s trafficking—including rooms rented by the Trafficker's third-party drug customers who did not occupy them and rooms booked in K.P.'s own name—in repeated successive stays despite obvious signs that the rooms were being used for sex trafficking and drug distribution;

d. Failing to adequately control and monitor access to the premises, including the rear entrances through which a steady stream of sex buyers entered the hotel and accessed the rooms while bypassing the lobby and front desk;

e. Failing to conduct adequate surveillance, monitoring, and patrolling of the premises, including the exterior areas where K.P. openly solicited commercial

sex, and failing to respond to the suspicious activity occurring openly on the property;

f. Failing to conduct any welfare check, inquiry, or intervention regarding K.P. despite her visible bruising and the frequent verbal and physical altercations between K.P. and the Trafficker occurring within earshot of hotel staff;

g. Failing to report suspected sex trafficking and the open and obvious drug activity on the premises to law enforcement, and failing to refuse accommodation to or eject the Trafficker and those acting at his direction;

h. Ignoring the drugs and drug paraphernalia—including bongs and crack pipes—that were present and visible in the rooms occupied by K.P. and the Trafficker, which were observed or should have been observed by housekeeping staff at turnover between stays;

i. Failing to monitor, filter, or take reasonable measures regarding the hotel's guest Wi-Fi system, which, upon information and belief, was used to advertise K.P. online for commercial sex on SkipTheGames; and

j. Failing to exercise the care, caution, and diligence required under the circumstances.

55. The RRI Brand Defendants are directly liable for their own negligence because they retained and exercised control over the methods and details of aspects of the operation of the Subject Red Roof Inn directly relevant to guest safety and the prevention of sex trafficking—including brand standards, safety and security policies, human trafficking training, reservation and payment systems, and Wi-Fi and cybersecurity requirements—and because, having undertaken to establish and administer such policies, training, and systems, they performed that undertaking

negligently. The RRI Brand Defendants are additionally vicariously liable for the negligence of the Franchisee Defendant, their actual agent, and the Franchisee Defendant is vicariously liable for the acts and omissions of its employees committed within the scope and course of their employment.

56. As a direct and proximate result of Defendants' negligent acts and omissions, K.P. was repeatedly sexually exploited, sexually abused, and sex trafficked at the Subject Red Roof Inn and suffered the severe and permanent physical, mental, emotional, psychiatric, and psychological injuries described above.

**DAMAGES**

57. As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1595(a) and Defendants' negligence, K.P. has sustained damages. Defendants are jointly and severally liable for all past and future damages.

58. K.P. seeks to recover damages, including but not limited to the following past and future losses:

a. Compensatory damages in an amount to be determined at trial;

b. All available economic damages, including past and future lost earnings and earning capacity, and past and future medical, hospital, counseling, therapy, psychiatric, and other healthcare expenses;

c. All available noneconomic damages, including conscious pain, conscious suffering (physical and mental), and loss of enjoyment of life;

d. Past and future life care expenses and other necessary support services;

e. Consequential economic losses and other out-of-pocket expenses;

f. Disgorgement of profits obtained through unjust enrichment;

g. Restitution;

h. Punitive (exemplary) damages, as permitted by law;

i. Reasonable attorneys' fees as authorized by 18 U.S.C. § 1595(a);

j. Costs of this action;

k. Pre-judgment and post-judgment interest; and

l. Such other and further relief as this Court deems just and equitable.

## JURY DEMAND

59. K.P. demands a trial by jury on all issues so triable.

## RELIEF SOUGHT

WHEREFORE, K.P. prays that this case be set for trial before a jury and that, upon a final hearing of the cause, judgment be entered for K.P. against all Defendants jointly and severally for the actual, compensatory, and punitive damages as the evidence may show and the jury may determine to be proper, together with the costs of suit, prejudgment interest, post-judgment interest, and such other and further relief to which K.P. may, in law or in equity, show herself to be justly entitled.

Dated: June 16, 2026

Respectfully submitted,

s/ Matthew J.P. Coffman
Matthew J.P. Coffman
Coffman Legal, LLC
1550 Old Henderson Rd #126
Columbus, OH 43220
Phone: (614) 949-1181
Fax: (614) 386-9964
mcoffman@mcoffmanlegal.com
Local Counsel for Plaintiff

Tristan Akers, Esq.
Coffman Legal, LLC
1550 Old Henderson Rd #126
Columbus, OH 43220
Phone: (614) 949-1181
Fax: (614) 386-9964
Local Counsel for Plaintiff

and

Randolph Janis, Esq.
DOUGLAS AND LONDON, P.C.
(PHV motion forthcoming)
1 State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
rjanis@douglasandlondon.com

Chloe Makowsky, Esq.
DOUGLAS AND LONDON, P.C.
(PHV motion forthcoming)
1 State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
cmakowsky@douglasandlondon.com

Attorneys for Plaintiff